IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JAMES DANIEL LEIGH,                §
#126030544,                        §
                                   §
              Plaintiff,           §
                                   §
V.                                 §            No. 3:20-cv-488-X-BN
                                   §
DAVID BLANKENSHIP, ET AL.,         §
                                   §
              Defendants.          §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff James Daniel Leigh filed this *pro se* civil rights action against four

employees at the Johnson County jail. *See* Dkt. No. 3. United States District Judge

Brantley Starr referred Leigh's case to the undersigned United States magistrate

judge under 28 U.S.C. § 636(b) and a standing order of reference.

The Court granted Leigh leave to proceed *in forma pauperis* (IFP) under the

Prison Litigation Reform Act (the PLRA). *See* Dkt. No. 5. To screen Leigh's claims,

the Court ordered Johnson County Sheriff Adam King to file a written report under

*Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) [Dkt. Nos. 7, 8 & 9]. And Leigh

responded. *See* Dkt. No. 14.

The undersigned now enters these findings of fact, conclusions of law, and

recommendation that the Court should dismiss this case with prejudice.

**Legal Standards**

Under the PLRA, where a prisoner – whether he is incarcerated or detained

pending trial – seeks relief from a governmental entity or employee, a district court

must, on initial screening, identify cognizable claims or dismiss the complaint, or any portion of the complaint, that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

The fails-to-state-a-claim language of this statute (as well as its sister statute, Section 1915(e)(2)(B)) "tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam).

And "[i]t is well-established that a district court may dismiss a complaint on its own motion under [Rule] 12(b)(6) for failure to state a claim upon which relief may granted." *Starrett v. U.S. Dep't of Defense*, No. 3:18-cv-2851-M-BH, 2018 WL 6069969, at *1 (N.D. Tex. Oct. 30, 2018) (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006) (citing, in turn, *Shawnee Int'l, N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984))), *rec. accepted*, 2018 WL 6068991 (N.D. Tex. Nov. 20, 2018), *aff'd*, 763 F. App'x 383 (5th Cir.) (per curiam), *cert. denied*, 140 S. Ct. 142 (2019).

A district court may exercise its "inherent authority ... to dismiss a complaint on its own motion ... 'as long as the procedure employed is fair.'" *Gaffney v. State Farm Fire & Cas. Co.*, 294 F. App'x 975, 977 (5th Cir. 2008) (per curiam) (quoting *Carroll*, 470 F.3d at 1177 (quoting, in turn, *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)); citation omitted). The United States Court of Appeals for Fifth Circuit has "suggested that fairness in this context requires both notice of the court's intention to dismiss *sua sponte* and an opportunity to respond." *Id.* (quoting *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007) (quoting, in turn, *Carroll*, 470 F.3d at 1177); internal quotation marks and brackets omitted). These findings,

conclusions, and recommendations provides notice, and the period for filing objections to them affords an opportunity to respond. *See, e.g.*, *Starrett*, 2018 WL 6069969, at *2 (citations omitted)).

Dismissal for failure to state a claim under either Section 1915A(b)(1), Section 1915(e)(2)(B)(ii), or Rule 12(b)(6) "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam)), as neither the PLRA, the IFP statute, nor the Federal Rules of Civil Procedure "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 574 U.S. at 11.

Instead, plaintiffs need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Id.* at 12 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also*

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

This rationale has even more force here, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). But "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential

claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

In sum, "*[p]ro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient….'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)).

And, "[o]rdinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.'" *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)). But leave to amend is not required where an amendment would be futile, *i.e.,* "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion," *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)), or where a plaintiff has already amended his claims, *see Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

A *Martinez* report – like an evidentiary hearing held under *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) – is "a tool" to be used to further develop the factual basis of an *in forma pauperis* or prisoner complaint, to determine whether *sua sponte* dismissal is appropriate. *Wiley v. Thompson*, 234 F. App'x 180, 182 (5th Cir. 2007) (per curiam) (recognizing that the Fifth Circuit has "adopted the *Martinez* report as a tool" and citing *Cay v. Estelle*, 789 F.2d 318, 323 n.4, 324 (5th Cir. 1986) ("Regardless of the means used to develop the factual basis of a claim, dismissal under [either 28 U.S.C. § 1915(e) or § 1915A] is appropriate whenever it becomes clear that an IFP [or prisoner] complaint is without merit."), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992)); *accord Hamer v. Jones*, 364 F. App'x 119, 122 n.2 (5th Cir. 2010) (per curiam) ("This court has adopted the procedures used in *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), as a tool by which an administrative record is constructed to assist in assessing prisoner litigation under 28 U.S.C. § 1915." (citing *Norton v. Dimazana*, 122 F.3d 286, 292-93 (5th Cir. 1997))).

But information provided through "[a] *Martinez* report may not be used to resolve material disputed fact findings when they are in conflict with the pleadings or affidavits." *Newby v. Quarterman*, 325 F. App'x 345, 354 (5th Cir. 2009) (per curiam) (citing *Shabazz v. Askins*, 980 F.2d 1333, 1334-35 (10th Cir. 1992)); *accord Cardona v. Taylor*, 828 F. App'x 198, 201 (5th Cir. 2020) (per curiam) (collecting cases).

"'A bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the *Martinez* report are less specific or well-documented than

those contained in the report.'" *Shabazz*, 980 F.2d at 1334-35 (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991)). "A plausible factual allegation, even if it lacks evidentiary support, is not 'frivolous' as contemplated by § [1915(e)], even though it may not survive a motion for summary judgment." *Hall*, 935 F.2d at 1109. And, "[b]ecause pro se litigants may be unfamiliar with the requirements to sustain a cause of action, they should be provided an opportunity to controvert the facts set out in the *Martinez* report." *Id.*[1]

## Analysis

Leigh broadly alleges that he has "been getting heavily drugged and molested by other inmates" and that "correctional officers assisted these inmates" by allowing them access to Leigh after he "had been drugged unconscious," and he contends that these conclusory assertions could be verified "by watching the jail's video footage." Dkt. No. 3 at 4, 5.

He further alleges that the jail investigated these allegations under PREA, *see*

---

[1] *See also Bailey v. Vincent*, 694 F. App'x 283, 284 (5th Cir. 2017) (per curiam) ("[A]lthough the State raised affirmative defenses in its *Martinez* report, *Bailey* has shown no error in the district court's reliance on the report, which was otherwise proper under the circumstances." (citing *Parker v. Carpenter*, 978 F.2d 190, 191 n.2 (5th Cir. 1992) (approving the Tenth Circuit's *Martinez v. Aaron* procedures as a means "to enable the trial court to make a determination of frivolity" (cleaned up)))); *Ruiz v. Mercado*, Civ. A. No. M-14-1921, 2016 WL 1166040, at *2 (S.D. Tex. Feb. 10, 2016) ("A court may base a dismissal under 28 U.S.C. § 1915(e) 'on medical or other prison records if they are adequately identified and authenticated,' such as those included in a *Martinez* report, and medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. However, 'a *Martinez* report may not be used to resolve material disputed fact findings when they are in conflict with the pleadings or affidavits.'" (citations omitted)), *rec. adopted*, 2016 WL 1162264 (S.D. Tex. Mar. 23, 2016).

*id.* at 4-6, which the Court understands as a reference to the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601 *et seq.* After an investigation, the jail could not corroborate Leigh's allegations. *See* Dkt. No. 3 at 5 ("Three weeks after the interview with the PREA officer, I was interviewed by Captain Blankenship … about the assaults and two weeks after that I was informed my claims were unsubstantiated. During the interview with Captain Blankenship I did inform him that my prostate was still in pain."). But Leigh alleges that his case was not "given a prompt and thorough objective investigation. And, since reporting the sexual assaults, I have not been free from retaliation by staff or other inmates." *Id.* at 5 ("My lawsuit is against the jail for not providing a safe environment for myself, for correctional officers being involved in the assaults, and for the gross mishandling of the PREA case that appears to be done in a fashion to clear the jail of any publicity or wrong-doing.").

And, as to the named defendants, David Blankenship, alleged to be "Captain of the Sheriffs Office"; Bryan Gordy, the "Jail Administrator"; Charlie Carraway, "Jail Captain and PREA Officer"; and Kathryn Dykes, "Medical Supervisor," Leigh alleges that Blankenship "is responsible for the jail and the poor conduct of its employees" and "also investigated this PREA case"; that Gordy "signed-off on the Step 2 Grievance"; that Carraway "was directly responsible for the improper PREA investigation"; and that Dykes "did not give [Leigh] any medical attention due to PREA investigation." Dkt. No. 3 at 3.

First, PREA itself affords Leigh no cause of action. *See, e.g.*, *Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2019 WL 5031357, at *21 (N.D. Tex. July 29,

2019) ("[B]ecause [PREA] 'does not create or provide a private cause of action, [Plaintiff's] claims for relief ... under the provisions of the PREA must be dismissed ... for failure to state a claim upon which relief may be granted.'" (quoting *Molina v. Wise Cnty., Tex.*, No. 4:17-cv-809-Y, 2019 WL 2176272, at *2 (N.D. Tex. May 20, 2019); citing *Krieg v. Steele*, 599 F. App'x 231, 232-33 (5th Cir. 2015) (per curiam) ("Insofar as Krieg argues that his rights under the [PREA] were violated, other courts addressing this issue have found that the PREA does not establish a private cause of action for allegations of prison rape. Krieg has cited no case in support of his position; therefore, any claim raised under the PREA is properly dismissed as frivolous." (collecting cases)))), *rec. accepted*, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019).

Next, Leigh does not have a constitutional right to have grievances resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (per curiam) ("As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.").[2]

> A prison system is not required to establish grievance procedures, and the failure of a jail or prison to establish or adhere to a grievance procedure does not rise to the level of an actionable constitutional claim. Accordingly, inmates have no basis for a civil rights lawsuit simply because they are unhappy with grievance procedures. [So a court should

---

[2] *See also Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (per curiam) (holding that the plaintiff had no actionable 42 U.S.C. § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances); *Lijadu v. I.N.S.*, Civ. A. No. 06-0518, 2007 WL 837285, at *3 (W.D. La. Feb. 21, 2007) ("[D]etainees do not have a constitutionally protected right to a grievance procedure – much less one that complies with their own personal preferences." (citation and internal quotation marks omitted)).

dismiss associated claims] with prejudice, as allowing [leave] to amend the grievance claim would be futile.

*Cornett v. Edge*, No. 3:20-cv-89-M-BN, 2020 WL 890387, at *2 (N.D. Tex. Jan. 16, 2020) (citing 42 U.S.C. § 1997e(b); *Archie v. May*, Civ. No. 13-3185, 2014 WL 993506, at *3 & n.1 (W.D. La. Mar. 13, 2014) (collecting cases)), *rec. accepted*, 2020 WL 888535 (N.D. Tex. Feb. 24, 2020).

This limitation applies to claims concerning the adequacy of an investigation conducted after an alleged sexual assault at a jail. *See, e.g.*, *Shivers v. Lard*, No. 13-CV-2406, 2014 WL 992084, at *2 (W.D. La. Mar. 13, 2014) ("As for Horn, Heyse, and Smiley, [the plaintiff] complains that these defendants failed to conduct an adequate investigation after the assault, and failed to adequately address his administrative grievances. Plaintiff has not sufficiently alleged a claim against Horn, Heyse, and Smiley. An inmate does not have a constitutional right to have his grievances addressed and resolved to his satisfaction." (citing *Geiger*, 404 F.3d at 374)).

The Court should therefore dismiss the claims against Gordy and Carraway and the non-supervisory claim against Blankenship with prejudice.

Insofar as Leigh alleges claims based on the medical care that he has received at the jail – including, as against Dykes, his conclusory assertion that the jail did provide him "any medical attention due to PREA investigation" – Leigh has not alleged a constitutional claim based on deliberate indifference under the Eighth Amendment – or, more applicable, a violation of the Fourteenth Amendment Due Process Clause. *See Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (observing that the Fifth Circuit "has based its Fourteenth Amendment case law

concerning pretrial detainees on the [United States] Supreme Court's Eighth

Amendment precedent concerning prisoners" (citations omitted)).

> The [Constitution] requires prison officials to provide "humane conditions of confinement" with due regard for inmate health and safety. *Farmer v. Brennan*, 511 U.S. 825, 832, 837 (1994). To show a violation, inmates must prove that they were exposed "to a substantial risk of serious harm" and "that prison officials acted or failed to act with deliberate indifference to that risk." *Carlucci*, 884 F.3d at 538 (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). The presence of a substantial risk is an objective inquiry. *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019). Deliberate indifference, however, is subjective; it requires a showing that prison officials had actual knowledge of a risk and disregarded it. *Id.* Knowledge may be inferred from the circumstances, particularly where the risk is obvious. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).

*Valentine v. Collier*, 978 F.3d 154, 162-63 (5th Cir. 2020) (citation modified).

"Deliberate indifference is an extremely high standard to meet." *Domino v. TDCJ*, 239 F.3d 752, 756 (5th Cir. 2001). And, to survive screening, Leigh must allege facts that show, or from which the Court may infer, "'that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Valentine*, 978 F.3d at 163 (quoting *Gobert*, 463 F.3d at 346); *see also Young v. McCain*, 760 F. App'x 251, 257 (5th Cir. 2019) (per curiam) ("To establish an Eighth Amendment violation, the prisoner must demonstrate that the conditions of his confinement were 'so serious as to deprive prisoners of the minimal ... measure of life's necessities, as when it denies the prisoner some basic human need,' and further, that the responsible prison officials acted with deliberate indifference to the prisoner's health or safety." (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995))).

Here, the claims that Leigh brings that could liberally be construed as alleging deliberate indifference are conclusory. They are not supported by facts that show, or from which the Court may infer, that he did not receive any medical care.

Further, while the Court may not use the *Martinez* report "to resolve material disputed fact findings when they are in conflict with the pleadings or affidavits," *Newby*, 325 F. App'x at 354; *see also Cardona*, 828 F. App'x at 201, conclusory factual allegations are not material. And the Court may dismiss deliberate indifference claims as frivolous under Sections 1915(e) and 1915A based on its review of a plaintiff's medical records adequately identified and authenticated through a *Martinez* report. *See, e.g.*, *Ruiz*, 2016 WL 1166040, at *2 (citing *Banuelos v. McFarland*, 41 F.3d 232, 234-35 (5th Cir. 1995) ("[D]ismissals [under Section 1915(e)] can be based on 'medical and other prison records' if they are 'adequately identified or authenticated.'… The district court held that Banuelos' medical-care 'claim does not involve a medical problem that is serious nor does it involve deliberate indifference.' Because this is supported by Banuelos' medical records, the district court did not err by dismissing this claim as frivolous." (citing *Wilson v. Barrientos*, 926 F.2d 480, 482-84 (5th Cir. 1991)))).

Leigh's medical records identified in the *Martinez* report, *see* Dkt. No. 12 at 9-56, and authenticated, *see id.* at 5-8, do not demonstrate that he was either refused treatment, ignored, or treated incorrectly or otherwise evince behavior that could show a wanton disregard for a serious medical need. For example, these records include an email from October 2019, on the same day that Leigh alleges he first

contacted the jail's PREA officer, stating that, when Leigh was seen for sick call that day – as to his complaints that his heart was racing and his blood pressure was elevated – he was monitored for the elevated blood pressure, referred for a psychiatric exam, and placed in acute care. *Compare id.* at 12, *with* Dkt. No. 3 at 4.

The Court should therefore dismiss the claims based on deliberate indifference, including the claims against Dyke, with prejudice.

Any claim of retaliation is similarly frivolous, because, at a minimum, Leigh has not alleged a plausible constitutional violation. *See Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) ("The elements of a claim under a retaliation theory are the plaintiff's invocation of 'a specific constitutional right,' the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, 'but for the retaliatory motive the complained of incident ... would not have occurred.'" (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995))).

Next, insofar as Leigh asserts liability against Blankenship because, Leigh alleges, Blankenship "is responsible for the jail and the poor conduct of its employees," there is no vicarious liability under 42 U.S.C. § 1983.

Relatedly, Leigh alleges that he has brought a lawsuit against the jail. But he fails to allege that the jail is a jural entity – an entity that has a separate and distinct legal existence and thus may be sued. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that, "unless the true political entity has taken explicit steps to grant the servient agency with jural

authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313; *see, e.g.*, *Rambo v. Valdez*, No. 3:16-cv-02-O, 2016 WL 4398969, at *2 (N.D. Tex. May 6, 2016) (applying Darby to find that the Dallas County jail is a non-jural entity under Section 1983).

Finally, to the extent that Leigh, by alleging that he is suing the jail, actually intends to bring a suit against Johnson County, the County may only "be held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted). That is, "[t]here is no vicarious municipal liability under § 1983; rather, plaintiffs 'must prove that "action pursuant to official municipal policy" caused their injury.'" *Three Legged Monkey, L.P. v. City of El Paso, Tex.*, 652 F. App'x 236, 239 (5th Cir. 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting, in turn, *Monell*, 436 U.S. at 691)).

To assert liability under *Monell*, a plaintiff must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Leigh's complaint fails as to these prongs. And, more importantly, to the extent that he intends the hold Johnson County liable based on the alleged PREA violation

or the allegedly inadequate investigation, Leigh has failed, for the reasons previously explained, to show a constitutional injury.

In sum, the Court should dismiss Leigh's complaint, and this dismissal should be with prejudice at this stage, as the Court may properly consider Leigh's medical records adequately identified and authenticated through a *Martinez* report, and Leigh has responded to that report. Thus, Leigh has had the ability to state his best case. And, to the extent that he disagrees with this assessment, the opportunity to file objections to these findings, conclusions, and recommendation provide him another opportunity to explain why his claims should not be dismissed with prejudice. *Cf. Anokwuru v. City of Houston*, ___ F.3d ____, No. 20-20295, 2021 WL 968830, at *7 (5th Cir. Mar. 16, 2021) ("A district court may dismiss *sua sponte* a complaint for failure to state a claim 'as long as the procedure employed is fair.' Generally, 'fairness in this context requires both notice of the court's intention and an opportunity to respond.'" (quoting *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014))).

## Recommendation

The Court should dismiss this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 25, 2021

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE